CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **WALTER RANDOLPH NAPIER, JR., Plaintiff,** | ) | **Case No. 7:23-cv-00098** |
| **v.** | ) | |
| **PAUL C. OHAI, et al., Defendants.** | ) | **By: Michael F. Urbanski Senior United States District Judge** |

## MEMORANDUM OPINION

Walter Randolph Napier, Jr., a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against a multitude of individuals employed by or associated with the Virginia Department of Corrections (VDOC). Napier claims that the defendants failed to provide adequate medical treatment while he was incarcerated at Buckingham Correctional Center (BKCC), in violation of the Eighth Amendment and Virginia law. The court previously ruled on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by 22 individual defendants. See Mem. Op. and Order, ECF Nos. 121 and 122. The case is now before the court on a motion to dismiss filed by Nurse Practitioner (NP) Barbara Frost, NP Leah Lange, and NP Keilah Yisrael (collectively, the NP defendants). ECF No. 155. Napier has not responded to the motion, and the time for doing so has expired. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

Napier asserts Eighth Amendment claims related to several medical issues, including diabetic neuropathy; Bell's palsy; ear, nose, and throat (ENT) symptoms; and a prior history of skin cancer. He also asserts claims of negligence under Virginia law.

The operative second amended complaint is over 100 pages long and is accompanied by more than 60 pages of exhibits. ECF No. 79. It also references exhibits submitted with the original complaint, which span nearly 400 pages. See ECF Nos. 1-1–1-6.[1] The court has reviewed all of Napier's factual allegations and exhibits. The court will discuss the allegations and exhibits relevant to the NP defendants in the discussion section below.

## II. Standard of Review

Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (internal quotation marks and brackets omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166-67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But 'liberal construction does not mean overlooking the pleading requirements

[1] When referencing the exhibits submitted by Napier, the court will use the docket and page numbers assigned by the court's CM/ECF system.

under the Federal Rules of Civil Procedure.'" Seabrook v. Driscoll, 148 F.4th 264, 269 (4th Cir. 2025) (quoting Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020)). A complaint filed without the assistance of counsel "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

In determining whether a complaint states a plausible claim for relief, the court may "consider documents that are explicitly incorporated into the complaint by reference" or "attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). The court also "may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## III. Discussion

Napier seeks relief under § 1983 for alleged violations of his Eighth Amendment right to adequate medical treatment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

An Eighth Amendment claim of deliberate indifference has two components. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference

to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

The subjective component of deliberate indifference "requires showing that the defendant 'had actual subjective knowledge of both the plaintiff's serious medical condition and the excessive risk posed by the official's action or inaction.'" Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) (brackets omitted) (quoting Jackson, 775 F.3d at 178). To satisfy this element, Napier must show that a defendant "knew of and disregarded an excessive risk to [his] health or safety." Id. (internal quotation marks omitted). This is an "exacting standard." Jackson, 775 F.3d at 178. "Disagreements between an inmate and a physician over the inmate's proper medical care do not cut it, and evidence that might show medical malpractice is not necessarily sufficient." Phoenix, 95 F.4th at 859 (internal quotation marks and citations omitted); see also Hixson, 1 F.4th at 303 ("Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'") (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)). Instead, "[o]nce prison officials are aware of a serious medical need, they only need to 'respond[] reasonably to the risk.'" Id. at 302 (quoting Farmer, 511 U.S. at 844). Although "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (footnote omitted). "[G]overnment officials who ignore

indications that a prisoner's . . . initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." Stevens v. Holler, 68 F.4th 921, 933 (4th Cir. 2023) (internal quotation marks omitted).

The NP defendants have moved to dismiss the claims of deliberate indifference asserted against them as part of Claims 1, 2, 3, and 4 of the operative second amended complaint.[2] The court will address each claim in turn.

**1. Claim 1: Inadequate Treatment for Diabetic Neuropathy**

In his first claim, Napier seeks to hold various defendants, including NP Frost and NP Yisrael, liable for failing to adequately treat his diabetic neuropathy. Napier alleges that this condition, when not properly treated, causes "severe, unyielding pain in his feet, legs, and hip; hot flashes; restless leg syndrome; [and an] inability to rest, relax nor sleep for any duration of time." 2d Am. Compl. ¶ 11.

Prior to June 2019, Napier was prescribed gabapentin for diabetic nerve pain. Id. Gabapentin, also known by the brand name Neurontin, is an anticonvulsant medication that has been approved by the Food and Drug Administration (FDA) for the treatment of epileptic seizures and postherpetic neuralgia. See Apotex, Inc. v. FDA, 393 F.3d 210, 211 (D.C. Cir. 2004); Smith v. Marthakis, No. 3:23-cv-00216, 2025 WL 2613448, at *2 (N.D. Ind. Sept. 9, 2025). It is also administered "off-label" for "addressing pain from diabetic neuropathy."

[2] The NP defendants have not addressed the claims of medical negligence asserted against them as part of Claim 7. Accordingly, those claims remain pending.

Thomas v. Booth, 3:21-cv-50200, 2024 WL 4027919, at *3 n.6 (N.D. Ill. Sept. 3, 2024) (citation omitted).[3]

Effective July 1, 2019, gabapentin was classified as a Schedule V controlled substance in Virginia. See Va. Code Ann. § 54.1-3454. Around the same time, according to Napier, the VDOC implemented a new policy that restricted correctional medical providers from prescribing gabapentin for pain. 2d Am. Compl. ¶¶ 12, 41–42.

After Napier's prescription for gabapentin was discontinued, "he was prescribed a litany of substitutes," including "debilitating psychotropics." Id. ¶ 14 n.5. However, none of the substitutes controlled Napier's neuropathic pain. Id. He alleges that gabapentin is the "only medication" that provides him effective pain relief. Id. ¶ 23.

Napier alleges that another defendant, Dr. Ohai, the head physician at BKCC, issued a memorandum in November 2019 indicating that inmates who were taking gabapentin "would have their medical files individually reviewed for 'medical need.'" Id. ¶ 22. Napier alleges that, contrary to the memorandum, Dr. Ohai "did not individually review his file or assess his specific individual medial need." Id. Instead, Dr. Ohai "forbade" the BKCC medical staff from administering gabapentin to Napier. Id. When Napier saw Dr. Ohai on September 1, 2020, he specifically informed Dr. Ohai of his "unmitigated foot and leg pain, and the non-effective medications providers had prescribed." Id. ¶ 24. He also emphasized that he had successfully taken gabapentin for years prior to his prescription being discontinued. Id. Nonetheless, Dr.

[3] See also Gabapentin, U.S. National Library of Medicine: Medline Plus, available at https://medlineplus.gov/druginfo/meds/a694007.html (last accessed Sept. 30, 2026) ("Gabapentin is also sometimes used to relieve the pain of diabetic neuropathy (numbness or tingling due to nerve damage in people who have diabetes).").

Ohai refused to prescribe the medication. Id. Although Dr. Ohai claimed that "'Richmond' no longer 'allowed' gabapentin treatment," id. ¶¶ 24– 25, other members of the medical staff informed Napier that "it was Ohai who refused to allow gabapentin prescriptions even though clinically appropriate." Id. ¶ 22 n.10.

At various times in 2020, 2021, and 2022, Napier saw or spoke to NP Yisrael and NP Frost regarding the pain caused by diabetic neuropathy. Id. ¶¶ 26, 28. For instance, during a chronic care appointment, Napier informed NP Yisrael that "he had been in pain for months due to the neuropathy being untreated," that Neurontin (gabapentin) "treated the pain," and that "no one had offered any treatment." Id. ¶ 26. Similarly, Napier told NP Frost "numerous times" that he was in "constant pain due to his diabetic nerve pain." Id. ¶¶ 28–29. Nonetheless, these defendants did not offer or attempt to provide any additional medical treatment. Id. ¶¶ 27, 29.

Medical records submitted by Napier indicate that on September 26, 2022, he reported having taken NSAIDs, Elavil, and nortriptyline without relief, after being prescribed 800 milligrams of Neurontin (gabapentin) three years earlier. ECF No. 1-5 at 39. The unidentified NP who examined him on that date placed him back on Neurontin. Id.

Napier asserts that NP Yisrael and NP Frost acted with deliberate indifference by ignoring his complaints of severe diabetic nerve pain and failing to adequately treat his symptoms of diabetic neuropathy. Napier's allegations against these defendants are sufficient to state a claim for deliberate indifference at this stage of the proceedings. While Napier acknowledges that he was prescribed "a litany of substitutes for gabapentin," 2d Am. Compl. ¶ 14 n.5, "that alone does not foreclose" Napier's Eighth Amendment claim against NP Yisrael

and NP Frost. Perry v. Meade, 728 F. App'x 180, 182 (4th Cir. 2018) (citing De'Lonta, 708 F.3d at 526 (holding that, even if defendants "provided [plaintiff] with some treatment . . . , it does not follow that [defendants] have necessarily provided constitutionally adequate treatment")). A prison physician or NP "cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011) (cited with approval in Perry, supra). While NP Yisrael and NP Frost may be able to establish that they had valid reasons for not prescribing gabapentin or that their treatment decisions were otherwise based on their medical judgment, these questions will need to be explored on summary judgment and cannot be decided under Rule 12(b)(6). Id.; see also Goodman v. Johnson, 524 F. App'x 887, 889 (4th Cir. 2013) (vacating the dismissal of an inmate's claim that doctors refused to adequately address his medical complaints and noting that "[a]lthough such claims may, on closer inspection, amount to nothing more than a prisoner's disagreement with his diagnosis or prescribed treatment, prison doctors violate the Eighth Amendment if they . . . fail to adequately address a prisoner's complaints that the care he is receiving is not effective") (citing Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986)).

Additionally, the mere fact that the VDOC allegedly restricted the use of gabapentin or that Dr. Ohai allegedly refused to allow other practitioners to prescribe the medication does not preclude Napier from stating a claim of deliberate indifference against NP Yisrael and NP Frost. As the United States Court of Appeals for the Fourth Circuit recently emphasized, "simply following policy does not defeat a constitutional claim" of deliberate indifference. Edwards v. Witherspoon, ___ F.4th ___, 2026 WL 2661096, at *15 (4th Cir. Sept. 10, 2026) (citing Gordon, 937 F.3d at 361). Instead, "[t]here is an expectation that officials will still make individualized

determinations as to the level of care required." Id. (citing Roe v. Elyea, 631 F.3d 843, 860 (7th Cir. 2011) (emphasizing that "prison officials still must make a determination that application of [treatment] protocols result in adequate medical care")).

Accordingly, the NP defendants' motion to dismiss will be denied with respect to the claims of deliberate indifference asserted against NP Yisrael and NP Frost in Claim 1.[4]

### 2. Claim 2: Misdiagnosis of Bell's Palsy and Inadequate Treatment for ENT Issues

#### a. Bell's Palsy

On September 1, 2020, Napier presented to the medical department with multiple issues, including facial sagging, eye twitching, slurred speech, blurry vision, chest and neck pain, dizziness, nausea, and painful lymph nodes. 2d Am. Compl. ¶ 43. Napier alleges that he saw Dr. Ohai that same day and that Dr. Ohai diagnosed him with Bell's palsy without performing diagnostic testing "to ensure a correct diagnosis." Id. ¶¶ 43–44.

Napier subequently saw NP Yisrael for a chronic care appointment on December 8, 2020, during which they discussed ongoing pain and other symptoms related to the Bell's palsy diagnosis made by Dr. Ohai. Id. NP Yisrael noted that Napier complained of neck pain, swelling, and chronic adenopathy. ECF No. 1-4 at 39. She prescribed Keflex, an antibiotic, and requested a "referral to ENT/VCU" for the "next available" appointment. Id. She also noted that a neck ultrasound should be performed within the next few weeks. Id. However, Napier alleges that NP Yisrael "did no follow-up regarding her own instructions" to ensure that the ultrasound or VCU appointment was scheduled in a timely manner. 2d Am. Compl. ¶ 46 n. 31.

---

[4] The court also previously allowed Claim 1 to proceed against Dr. Ohai. See Mem. Op., ECF No. 121, at 17.

To the extent Napier claims that NP Yisrael, like Dr. Ohai, misdiagnosed his symptoms, the court concludes that his allegations at most support a claim of negligence, not deliberate indifference. See Jackson, 775 F.3d at 178 –79 ("While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged by Jackson, may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the 'high bar' of a constitutional claim.") (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (finding no deliberate indifference where doctors misdiagnosed a pituitary tumor that ultimately caused an inmate to go blind). The same is true for Napier's allegation that NP Yisrael failed to properly follow up on her referral instructions. "Although the intentional failure to schedule an appointment with a specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not." Blank v. Bell, 634 F. App'x 445, 448 (5th Cir. 2016).

**b. Ongoing ENT Issues**

As part of Claim 2, Napier also asserts that he continued to receive inadequate medical treatment for various ENT issues, including chronic earaches and swollen lymph nodes in his neck. See 2d Am. ¶ 50 (describing earaches, swelling, and neck tenderness).

The medical records submitted by Napier indicate that he saw NP Yisrael on September 7, 2021, for complaints of ear pain and swelling in his neck. ECF No. 1-4 at 45. NP Yisrael noted that Napier's right ear canal was slightly swollen and that there was some swelling in the right temporomandibular area. Id. NP Yisrael prescribed Augmentin, another antibiotic, and requested that Napier return for a follow-up evaluation in 14 days. Id.

Napier subsequently saw NP Frost on September 24, 2021. 2d Am. Compl. ¶ 51; ECF No. 1-4 at 24. NP Frost noted that Napier had completed his prescribed course of Augmentin and that he reported "some improvement" but continued to complain of right ear pain. ECF No. 1-4 at 24. She also documented moderate discomfort associated with the oropharynx and mild right anterior cervical lymphadenopathy. Id. For his right ear issues, NP Frost prescribed Cortisporin ear drops. Id.

On December 24, 2021, Napier submitted a written complaint alleging that he had been seen three times by two different NPs and that he "still [had] not been cured of [his] ear problems." 2d Am. Compl. ¶ 53. By that point, Napier had undergone an ultrasound on his neck. ECF No. 1-4 at 48. Although the ultrasound revealed only a "benign . . . lymph node inferior to the left ear," the reviewing physician recommended a "[c]linical follow-up." Id. In response to the written complaint, Napier was advised that medical staff was still "waiting on an appointment to be scheduled with VCU." 2d Am. Compl. ¶ 54.

On January 11, 2022, Napier saw NP Lange in connection with several issues, including an enlarged lymph node on the right side of his neck and a lump on the left side of his neck. Id. ¶ 57. NP Lange noted that the ENT referral was still pending at that time. ECF No. 1-4 at 28. Likewise, when LP Lange saw Napier again on January 20, 2022, she noted that Napier was "awaiting ENT appt. for cervical lymph node tenderness." 2d Am. Compl. ¶ 58.

On February 1, 2022, Napier submitted another written complaint alleging that he was still experiencing pain associated with "the enlargement and hardening of the lymph nodes" in his neck. Id. ¶ 59; ECF No. 1-1 at 31. An exhibit indicates that Napier saw NP Frost two days later and that she prescribed Naprosyn for pain. ECF No. 1-1 at 35.

On May 10, 2022, after learning that an existing ENT appointment had been cancelled, Napier submitted another written complaint emphasizing that he was still experiencing pain. 2d Am. Compl. ¶ 63. In response, Napier was advised that the ENT referral was pending and that the medical staff was "waiting for a date to be set." Id. ¶ 64.

The record reflects that Napier saw an ENT specialist with VCU Health System on July 11, 2022, and that the specialist recommended a nasal spray and "ibuprofen treatment" for pain. ECF No. 1-5 at 74; see also ECF No. 1-5 at 40 (handout from VCU Health System recommending ibuprofen (such as Motrin or Advil) for myofascial pain and temporomandibular joint disorder (TMJ)).

Having carefully reviewed Napier's allegations and the exhibits attached to his pleadings, the court concludes that he has failed to state a claim of deliberate indifference against any of the NP defendants with respect to his ENT issues. To the extent Napier asserts that the NP defendants failed to adequately treat his ENT issues, he has not set forth facts from which the court could reasonably infer that the treatment provided was constitutionally inadequate. The record reflects that Napier was examined on multiple occasions for his ENT-related complaints; that he underwent an ultrasound on his neck; that the NP defendants prescribed an antibiotic, ear drops, and Naprosyn for pain, and that they arranged for him to see an ENT specialist who ultimately recommended an over-the-counter pain reliever. He has not plausibly shown that the NP defendants "actually kn[ew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." De'Lonta, 330 F.3d at 634. To the extent Napier disagrees with the treatment provided, mere disagreement "fall[s] short of showing deliberate indifference." Jackson, 775 F.3d at 178.

To the extent Napier complains about the delay in obtaining an appointment with an ENT specialist, his claim fares no better. "Mere delay" is not enough to support a claim of deliberate indifference. Moskos v Hardee, 24 F.4th 289, 298 (4th Cir. 2022). To state an Eighth Amendment claim based on a delay in receiving treatment, a prisoner must show that "the delay itself place[d] the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." Id. And he must show that the defendants "subjectively recognized" that the delay posed a "substantial risk of serious harm" and that "their actions were inappropriate in light of that risk." Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021) (internal quotation marks omitted). Napier has not put forth facts sufficient to support each of these elements. Accordingly, Claim 2 fails to state a claim of deliberate indifference against the NP defendants, and their motion to dismiss will be granted with respect to this claim.

**3. Claim 3: Non-Continuity of Medication and Other Prescribed Treatment**

As part of Claim 3, Napier asserts that NP Yisrael acted with deliberate indifference by refusing to order sunscreen prescribed by Napier's dermatologist. According to the second amended complaint, "Napier is bald" and "keeps his entire scalp shaved." 2d Am. Compl. ¶ 44 n. 29. In late 2019, Napier underwent surgery at Ridgeview Dermatology in Lynchburg, Virginia, to remove a malignant melanoma on his scalp. Id. ¶ 95. Napier continued to see a dermatologist as a result of being a "post-operative skin cancer survivor," and the dermatologist prescribed sunscreen for Napier. Id. ¶ 84. Napier alleges that he saw NP Yisrael in May 2021 concerning the prescriptions ordered by the dermatologist and that NP Yisrael refused to order the

sunscreen prescribed by the dermatologist, despite knowing that skin cancer can be highly aggressive and has a high risk of recurrence. Id.

The NP defendants have moved to dismiss this claim solely on the basis that the applicable two-year statute of limitations expired before the claim was asserted for the first time against NP Yisrael in Napier's second amended complaint. However, Napier's original complaint, which was filed within the statute of limitations, named NP Yisrael as a defendant and included a claim devoted to "non treatment and omissions" associated with his history of melanoma. Compl., ECF No. 1, at 3, 10. Additionally, the NP defendants have failed to address whether the claim asserted in the second amended complaint is itself timely because it "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c)(1). Thus, at this stage of the proceedings, the court is unable to conclude that the statute of limitations bars the claim of deliberate indifference asserted against NP Yisrael in Claim 3. See Long v. Welch & Rushe, Inc., 28 F. Supp. 3d 446, 456 (D. Md. 2014) ("The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred."). The NP defendants' motion to dismiss will be denied with respect to this claim.

**4. Claim 4: Failure to Follow Other Dermatology Recommendations**

In Claim 4, Napier asserts that various defendants, including NP Lange, violated the Eighth Amendment by failing to follow the recommendations of a dermatologist after Napier underwent surgery to remove the melanoma on his scalp. On more than one occasion following the surgery, a dermatologist recommended that Napier continue to have periodic skin examinations. See ECF No. 1-4 at 12, 17.

Napier alleges that, on January 11, 2022, NP Lange "received Napier as a patient concerning . . . a dermatologist follow-up for a clinical skin exam." 2d Am. Compl. ¶ 102. NP Lange reported that Napier had no lesions or other skin problems. Id. (referencing ECF No. 1-4 at 28). She also reported that Dr. Ohai had previously noted that an outside dermatology appointment would not be necessary unless Napier had new skin problems. Id. Based on Dr. Ohai's recommendation and her appointment with Napier, Lange determined that a follow-up dermatology appointment was not necessary at that time. Id.

Napier claims that NP Lange acted with deliberate indifference by only performing a cursory skin examination that did not require the removal of any clothing and by relying on Dr. Ohai's opinion as to the need for any follow-up dermatology appointment. Notably, however, Napier does not allege that NP Lange overlooked any skin problems or refused to treat any existing skin issue. To the extent Napier believes that a nurse practitioner is not "qualified" to perform skin examinations, 2d Am. Compl. ¶ 102, or that the examination performed on January 11, 2022, did not meet the standard of care, "mere negligence is not enough to show deliberate indifference." Hixson, 1 F.4th at 303 (4th Cir. 2021).

## IV. Conclusion

For the reasons stated, the motion to dismiss filed by the NP defendants, ECF No. 155, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: September 30, 2026

Michael F. Urbanski
U.S. District Judge
2026.09.30 15:50:53
-04'00'

Michael F. Urbanski
Senior United States District Judge